UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ELITE AMENITIES, INC., et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 3:17-cv-00434-HLA-MCR |
| | ) |
| JULINGTON CREEK PLANTATION | ) |
| COMMUNITY DEVELOPMENT | ) |
| DISTRICT and CRAIG WRATHELL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CRAIG WRATHELL'S MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**COME NOW** the Plaintiffs, Elite Amenities, Inc. ("Elite") and Angela Palmieri ("Plaintiffs"), by and through their undersigned counsel, and file their opposition to Defendant Craig Wrathell's Dispositive Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law (the "Motion")(Doc. 18). In support thereof, Plaintiffs state as follows:

### I. FACTUAL BACKGROUND SUPPORTING OPPOSITION

**A. The District and its facilities management by Plaintiffs**

Defendant Julington Creek Plantation Community Development (at times referred to as "District"), is a municipal governing body located in St. Johns County, Florida. Doc. 17 ("Amended Complaint") ¶3, 8. The District is a local unit of a special-purpose government established to finance, construct, own and operate multiple recreational facilities at the Julington Creek Plantation Community in St. Johns County, Florida, including swimming pools, tennis courts, a skate park, a clubhouse, a fitness room and other recreation facilities (at times referred to

collectively as the "Facilities"). *Id.*, ¶9. District was managed by a District Manager and governed by an elected Board of Supervisors. *Id.*, ¶11.

Management of the Facilities at the District required the supervision and management of approximately 200-250 full-time and part-time employees. *Id.*, ¶10. Defendant District engaged in a formal contract bid process for the management work in the first quarter of 2015. *Id.*, ¶13. After a competitive selection process, Defendant District hired Plaintiff Elite to act as an independent contractor to provide management oversight, operation and maintenance of the Facilities. *Id.*, ¶14. On or about April 1, 2015, Defendant District and Plaintiff Elite entered into an agreement whereby, *inter alia*, Elite provided amenity management services. This agreement was renewed in April 2016, whereby Plaintiff Elite was to provide Defendant District the same services through March 31, 2017, with two (2) optional one (1) year renewals for a total contract term through March 31, 2019. *Id.*, ¶15. Plaintiff Palmieri is the owner and manager of Elite, and worked for the Defendant District from April 1, 2015 until termination on October 31, 2016. *Id.*, ¶¶2, 5. Plaintiff Elite had a written agreement with Defendant District and Plaintiff Palmieri had both a third-party benefit in such agreement of Plaintiff Elite and also performed her own work on site at the Facilities for Defendant District. *Id.*, ¶39.

**B. Defendant Craig Wrathell as District Manager, Secretary and Treasure**

Defendant Craig Wrathell was appointed District Manager, District Secretary and District Treasurer of Defendant District in or around August 27, 2015. *Id.*, ¶17. Defendant Wrathell's responsibilities as the District Manager involved, *inter alia*, advising Defendant District's Board of Supervisors regarding its business operations. Plaintiffs, however, did not have responsibility to advise Defendant District's Board of Supervisors regarding the behavior of Board members or their treatment of others. *Id.*, ¶18.

2

### C. Plaintiffs raise lack of diversity issue and subsequent investigation of Plaintiffs

As part of its work in 2015 for Defendant District, Plaintiffs Elite and Palmieri conducted an evaluation of the Facilities and the workforce at the Facilities. *Id.*, ¶19. The Plaintiffs' assessment found, among other things, a lack of racial diversity among the staff of the Facilities, as the majority of the staff were Caucasian and Plaintiffs specifically advised the Defendant District by and through its representatives and agents in 2015 of the substantial lack of racial diversity amongst the 200 plus employees working at the Facilities. *Id.*

Throughout 2015 and 2016, Plaintiffs hired a number of new employees to work at that Facilities, including staff that were not Caucasian. *Id.*, ¶20. In or around June 2016, Defendant Wrathell, in conjunction with Board of Supervisor member Tom Chambers caused the Defendant District to improperly initiate an investigation by a special counsel against Plaintiff Elite relating to its performance managing the Facilities despite no legitimate cause to initiate such investigation. *Id.*, ¶22. Defendant District engaged special counsel to investigate Plaintiffs, utilizing public funds without properly noticed meetings of the District's Board of Supervisors, or a vote of the Defendant District's Board of Supervisors, or a vote to approve the expenditure of funds for the special counsel's investigation. *Id.*, ¶23. The special counsel investigation of Plaintiffs was without the proper authorization or authority of the Defendant District. *Id.*

### D. Complaint by Plaintiffs of discriminatory acts of Supervisor Jacob

On a number of occasions in August 2016, the District's Board of Supervisor member Pat Jacob engaged in differing treatment of an African-American employee hired by the Plaintiffs to work at the Facilities for Elite. *Id.*, ¶24. On or about August 23, 2016, Plaintiff Palmieri sent an email to Defendant Wrathell and others complaining about Supervisor Jacob's treatment of the employee (the "Email"), stating as follows:

> Case in point, Pat [Supervisor Pat Jacob] has been in Mike's [African-American staff at the Facilities] office now numerous times addressing him in what I feel to be an unacceptable and harassing manner. (he has been her just 3 weeks) Jennifer will likely recall that upon our assessment in the beginning, we addressed the lack of diversity among the CDD staff. Mike is 1 of 3 team members I have brought on board with an ethnicity other than caucasion [sic]. In addition, her emails have been very pointed at Mike.

*Id.*, ¶25. Plaintiff Palmieri, in her individual capacity and on behalf of Plaintiff Elite, engaged in protected activity when she objected to and complained about unlawful discrimination based on race occurring within the workforce at the District and through the actions of the District's Supervisor Pat Jacob by communicating in writing such objections and complaints to Defendant Wrathell and others. *Id.*, ¶40. None of the Plaintiffs' duties relate to the operations, training, or conduct of the Board of Supervisors' members or their managing agents. *Id.*, ¶34.

On or about August 29, 2016, the District's special counsel concluded its investigation regarding Plaintiffs and issued a report to Defendants (the "report"). *Id.*, ¶26. The report was a critique of Plaintiffs' business management of the Facilities, but did not contain any specific recommendations for changes or alterations to Plaintiffs' operations related to the Facilities, and mentioned Plaintiff Palmieri by name throughout. *Id.*, ¶27. The report cost the Defendant District tens of thousands of dollars and was paid for by the Defendant District without prior approval of the disbursements in accordance with the Defendant District's By-laws and Florida law. *Id.* The report of the special counsel for the Defendant District was obtained and paid for by Defendant District in violation of the law of the State of Florida, and was used as pretext for the termination of Plaintiffs from work at the Facilities at the Defendant District. *Id.*, ¶36.

### E. Premature termination of Plaintiffs

On September 29, 2016, Defendant District's Board of Supervisors held a public meeting. During the meeting, Supervisor Pat Jacob publicly read part of the Email that Plaintiff Palmieri had sent to District staff, stating about the Email, *inter alia*, that Plaintiffs had accused Ms. Jacob

4

of being "racist" and that she had spoken to an African-American employee in an 'unacceptable and harassing manner. *Id.*, ¶28. Defendant Wrathell provided the Email to Supervisor Jacob, and Supervisor Jacob was publicly very upset with Plaintiffs about the Email. *Id.* Following her reading of the Email, Supervisor Jacob stated publicly that she did not understand how Plaintiff Palmieri could say "those things" and denied speaking in an inappropriate manner to the African-American employee. *Id.* Supervisor Jacob then stated that she found Plaintiff Palmieri's statements about Jacob's treatment of the African-American employee "very disturbing." *Id.*, ¶29.

Following Supervisor Jacob's statements about Palmieri's email, the Board of Supervisors of the Defendant District then voted to prematurely end Plaintiff Elite's agreement with Defendant District for the management of the Facilities. *Id.*, ¶30. This action also ended Plaintiff Palmieri's work at the Facilities. *Id.* Defendant Wrathell encouraged the Board of Supervisors to terminate the Defendant District's agreement with Plaintiff Elite. *Id.* Defendant District terminated Plaintiffs' agreement and work relating to the Facilities as retaliation because of statements by Plaintiff Palmieri regarding the discriminatory behavior and conduct of the Defendant District and a certain member of its Board of Supervisors, Pat Jacob, relating to the treatment of non-Caucasian employees/staff. *Id.*, ¶¶30, 35.

By letter dated October 3, 2016, Plaintiff Elite was notified that the agreement between Plaintiff Elite and the Defendant District was being terminated effective October 31, 2016, with certain provisions of the agreement continued for a limited period of time "to allow for a smooth and efficient transition . . . to the new District amenity management provider." *Id.*, ¶31. Following the September 29, 2016 Board of Supervisors Meeting, Plaintiff Elite advanced funds for the payment of employees working at the Facilities that was to be reimbursed by Defendant District in the ordinary course of the contract relationship, however, despite requisitions for the

5

reimbursement in November 2016, many weeks passed without the reimbursement to Plaintiff Elite and it was not until February 2017, that Defendant District finally reimbursed Plaintiff Elite. *Id.*, ¶32. The delayed reimbursement was in retaliation for the complaints of race discrimination by Plaintiffs. *Id.*, ¶35. Additionally, following the termination of Plaintiff Elite by Defendant District and a notification of possible claims by Plaintiff Elite against Defendant District of civil rights violations, Defendant District began, by its members and agents, to make threats of a lawsuit against Plaintiff Elite. *Id.*, ¶33.

Defendants District and Wrathell acted under color of law in their interactions with Plaintiffs. *Id.*, ¶¶17-18, 41.

## II. STANDARD FOR ADDRESSING MOTIONS TO DISMISS

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must accept as true all well-pled allegations in Plaintiffs' Amended Complaint and construe them, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party, i.e., Plaintiffs. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n. 1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998)); *Glover v. Liggett Group, Inc.,* 459 F.3d 1304, 1308 (11th Cir.2006). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weissman v. Nat'l Assoc. of Securities Dealers, Inc.*, 500 F.3d 1293, 1303 (11th Cir. 2007) (en banc) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957)). "Thus, the issue in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is not whether the plaintiff will ultimately prevail on his or her claim, but rather, whether the allegations contained in the complaint will be sufficient to allow discovery as to their proof." *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986). If

the Court identifies a technical pleading error, the appropriate step, when the same is curable by amendment, is to dismiss without prejudice and allow Plaintiff to amend and correct any technical problems. *Stevens v. Premier Cruises, Inc.,* 215 F.3d 1237, 1243 (11th Cir. 2000).

### III. ARGUMENT

#### A. Plaintiffs properly bring their Section 1981 retaliation claim against Wrathell

The Supreme Court and the Eleventh Circuit have recognized that 42 U.S.C. § 1981 ("Section 1981") encompasses claims for retaliation.[1] *See CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 457, 128 S.Ct. 1951, 1961, 170 L.Ed.2d 864 (2008) (retaliation claims permitted under § 1981); *Andrews v. Lakeshore Rehab. Hosp.,* 140 F.3d 1405, 1411-13 (11th Cir. 1998) (same). Here, Plaintiffs' Count I of the Amended Complaint set forth a claim for retaliation, specifically pleading:

40. Plaintiff Palmieri, in her individual capacity and on behalf of Plaintiff Elite, engaged in protected activity when she objected to and complained about unlawful discrimination based on race and color occurring within the workforce at the District and through the actions of the District's leader Supervisor Pat Jacob by communicating in writing such objections and complaints to Defendant Wrathell and others.

41. Defendant District, through its members, employees and agents, including Defendant Wrathell, under color of state law, took adverse action against the Plaintiffs and unlawfully retaliated against Plaintiffs in violation of 42 U.S.C. § 1981, as made applicable against the Defendants herein pursuant to 42 U.S.C. § 1983, by wrongfully terminating Plaintiff Elite's contract for amenities management services due to the objections and complaints about unlawful discrimination on account of race and color occurring within the District.

Doc. 17, ¶¶40-41. Plaintiffs do not bring a Section 1981 race discrimination claim.

Defendant Wrathell argues in his Motion, however, that for this action " a Section 1981 retaliation claim must allege that because of racial animus held by the defendant, the plaintiff

---

[1] Plaintiffs' claim under Section 1981 is brought under 42 U.S.C. § 1983. *See Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000).

suffered a materially adverse employment action by the hand of the defendant." Motion (Doc. 18) at 5. This is an incorrect articulation of the legal standard for Plaintiffs' retaliation claim.

Under Section 1981, retaliation claims relying on circumstantial evidence essentially employ the same analytical framework used for addressing discrimination claims that also rely solely on circumstantial evidence. *Bryant v. Jones*, 575 F.3d 1281,1307 (11th Cir. 2009) ("Absent direct evidence of discrimination, when analyzing claims for race-based retaliation brought under § 1981, [the Eleventh Circuit] employ[s] the tripartite analytical framework developed by the Supreme Court in [*McDonnell Douglas*, 411 U.S. 792]."). "Under this framework, a plaintiff alleging retaliation must first establish a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment[2] action; and (3) he established a causal link between the protected activity and the adverse action." *Id*. at 1307-08; *see also Goldsmith v. Bagby Eleator Co., Inc*., 513 F.3d 1261, 1277 (11th Cir., 2008). A plaintiff can establish that she engaged in protected activity by simply showing that she had a good faith, reasonable belief that the employer was engaged in unlawful practices. *See Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Thus, a plaintiff "need not prove the underlying discriminatory conduct that [she] opposed was actually unlawful in order to establish a prima case." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Therefore, in the instant matter, Defendant Wrathell is incorrect to contend that Plaintiffs must show as an element that the retaliation was "because of racial animus held by the defendant." Motion at 5. Instead, Plaintiffs need only show for a prima facie case of retaliation that they engaged in protected activity and that there was adverse action taken that was causally

---

[2] While *Bryant* was an employment case under Section 1981, the Supreme Court in *CBOCS West* recognized that non-employment contracts are similarly covered by the recognition of the anti-retaliation protection of Section 1981. *CBOCS West,* 553 U.S. at 455.

linked to the protected activity. *Bryant,* 575 F.3d at 1307-08. Thus, the correct standard under Eleventh Circuit law is that a plaintiff must show, as the first prong of its prima facie case of retaliation, protected activity and not an allegation of racial animus directed at the plaintiff, as Defendant Wrathell appears to suggest. Motion at 5.

Furthermore, Wrathell argues that because neither Elite nor Palmieri have a direct contract with him, they have no enforceable rights under Section 1981 against him. Motion at 6. This is an unduly restrictive view of a Section 1981 claim. For example, in *Bryant,* the Eleventh Circuit specially recognized a Section 1981 retaliation claim against individual managers of a county government, where the county employee refused to participate in an alleged discriminatory "plan." *Bryant,* 575 F.3d at 1301.

These management employees of the county did not have a specific contract with the Section 1981 claimant, but were proper defendants. *Id.* Here, Plaintiff Elite had a contract with the District and Palmieri had management work and third-party beneficiary status with regard to the contract. Doc. 17, ¶¶5, 15, 16, 39. Plaintiffs further allege that Wrathell, as the District Manager with extensive responsibilities over Plaintiffs, was the recipient of the original August 23, 2016, email complaining of Supervisor Jacob's discriminatory treatment, that Wrathell provided Pat Jacob the email, that he encouraged the Board of Supervisors to prematurely terminate the District's agreement with Elite at the September 29, 2016 meeting, which they did, and that he caused the illegitimate investigation into Elite and Palmieri that was used as pretext for termination. Doc. 17, ¶¶17, 22, 25, 28, 30. Based upon these acts, Plaintiffs have clearly set forth facts involving Wrathell that support a Section 1981 retaliation claim. *See Bryant,* 575 F.3d at 1307-08.

Wrathell also argues that Palmieri cannot claim against him because she has no direct contract with Wrathell or the District. Motion at 6. Relying upon *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470 (2006), a Section 1981 race discrimination claim, Wrathell asserts that Plaintiff Palmieri has to have a direct contract and cannot step into the shoes of Elite. Motion at 6-7. However, *Domino's Pizza* and *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8 (1 st Cir. 1999), also relied upon by Wrathell, are inapposite to the case at hand. First, neither of these cases addressed retaliation claims under Section 1981 and are prior to the Supreme Court's decision in *CBOCS West, Inc*. More importantly, Plaintiff Palmieri has alleged her own employment and management work at the District by performing work at the Facilities and her third-party beneficiary status for the Elite contract with the District. Doc. 17, ¶¶5, 16, 39. Even the investigative report improperly produced by Defendants specifically referenced Plaintiff Palmieri's work. Doc. 17, ¶27. Finally, Wrathell's reliance on *Domino's Pizza* is misplaced here where Plaintiff Palmieri has alleged she is also a third-party beneficiary[3] of the Elite contract with the District, since the Supreme Court specifically noted that its holding was not deciding the issue of whether someone with third-party beneficiary status could bring a race discrimination claim under Section 1981. *See Domino's Pizza,* 546 U.S. at 476 n.3. Accordingly, the Motion should be denied.

---

[3] Under Florida law, "[a] person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.,* 647 So.2d 1028, 1030-31 (Fla.Dist.Ct.App.1994). However, if the third party to the contract is an intended third party beneficiary of the contract, the third party may maintain a breach of contract action against a party that breaches the contract. *Id.* at 1031. "A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Id.* Here, Plaintiff Palmieri was responsible for managing the contract and the parties expected that. Doc. 17, ¶¶2, 5,16,19,23. 27,39.

**B. Plaintiffs have alleged in the Amended Complaint that Wrathell engaged in adverse actions.**

Defendant Wrathell contends that Plaintiffs cannot show any materially adverse action against Elite or Palmieri and, thereby, Plaintiffs are unable to make out a prima facie case of Section 1981 retaliation. Motion at 7. This conclusion, however, relies upon an overly restrictive view of the facts alleged in the Amended Complaint and ignores facts alleged that demonstrate adverse action by Wrathell directed toward Plaintiffs.

First, Wrathell's claim that there is no allegation in the Amended Complaint that he was involved in the contract termination by the Board of Supervisors is inaccurate. Motion at 8. Plaintiffs have alleged the following that adequately demonstrate Wrathell's involvement in the termination:

- Defendant Wrathell's responsibilities as the District Manager involved, *inter alia*, advising Defendant District's Board of Supervisors regarding its business operations (Doc. 17, ¶18);

- In or around June 2016, Defendant Wrathell in conjunction with Board of Supervisors' member caused the Defendant District to initiate an illegitimate investigation by a special counsel against Plaintiff Elite relating to its performance managing the Facilities (Doc. 17, ¶22);

- Defendant Wrathell provided the Email of Palmieri reporting concern about discrimination to Supervisor Jacob (Doc. 17, ¶28);

- At the vote for premature termination of Elite's contract on September 29, 2016, Wrathell encouraged the Board of Supervisors to terminate the Defendant District's agreement with Elite (Doc. 17, ¶30);

- Defendant Wrathell engaged in adverse unlawful acts against Plaintiffs by recommending the termination of Plaintiff Elite's agreement with Defendant District and removing Plaintiff Palmieri from the workplace at the Facilities because of Plaintiffs' protected activity of complaining about race discrimination by Supervisor Jacobs (Doc. 17, ¶42).

These acts, among others, clearly demonstrate adverse action directly by Wrathell.

11

Second, the timing of the Email to Wrathell from Palmieri setting forth her objections about race discrimination by Pat Jacobs on August 23, 2016, and the termination on September 29, 2016, gives rise to an inference of causal connection and thereby adverse action by Wrathell. *See Nelson v. Chattahoochee Valley Hosp. Soc*., 731 F.Supp.2d 1217, 1234-35 (M.D.Ala. 2010) (finding adverse actions occurring within two and a half months of protected activity satisfied third prong of prima-facie case of retaliation); *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficient to establish causal connection); *Donellon v. Fruehauf Corp*., 794 F.2d 598, 602 (11th Cir. 1986) (one month lapse sufficient to establish prima facie causation); *Berman v. Orkin Exterminating Co., Inc.,* 160 F.3d 697, 702 (11th Cir. 1998) (causation established where involuntary transfers occurred five weeks and two months after complaints of discrimination). Thus, the timing of the acts of the involvement of Wrathell set forth herein in relation to the contract termination by the Board of Supervisors gives rise to an inference of a causal connection such that Defendant's actions were adverse. Wrathell's argument that he had no involvement in the termination is belied by the allegations of the Amended Complaint.

Finally, Defendant Wrathell asserts that his alleged discriminatory comments about Plaintiff Palmieri based upon gender are irrelevant and that Section 1981 does not cover gender discrimination claims. Motion at 8. While Plaintiffs acknowledge that this case is not a gender discrimination case, the allegations of paragraph 21 of the Amended Complaint are relevant for purposes of showing unlawful Section 1981 retaliation.

Plaintiff's Amended Complaint sets forth facts that Defendant Wrathell spoke to Plaintiff Palmieri in a "condescending and derogatory tone that Plaintiff Palmieri believed was on account of her gender, female"; that Plaintiff Palmieri made her concerns about such treatment by

12

Defendant Wrathell known to Defendant District Board of Supervisor members, but the treatment continued; and that the "discriminatory treatment of Plaintiff Palmieri is evidence of an unlawful discriminatory attitude of Defendant Wrathell, which was tolerated by the Defendant District Board of Supervisors' members." Doc. 17, ¶21. Here, Plaintiffs are entitled to present evidence of the environment in its totality for consideration of whether or not discriminatory/ retaliatory treatment exists. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). These incidents are part of the discrimination evidence which, if believed by the jury, leads to an inference of unlawful discrimination. In *U. S. Postal Service v. Aikens,* 460 U.S. 711, 716-17 (1983), the Supreme Court recognized the dilemma facing courts in the typical discrimination case where there is no direct evidence of discrimination:

> All Courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult. … The law often obliges finders of fact to inquire into a person's state of mind. As Lord Justice Bowen said in treating this problem in an action for misrepresentation nearly a century ago: "The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else."

It is for this reason that the *Aikens* Court held that evidence of the employer's discriminatory attitude in general is both relevant and admissible to prove discrimination. *U. S. Postal Service v. Aikens,* 460 U.S. at 713-14, n.2. Therefore, in the instant case, evidence that Wrathell had discriminatory attitudes as reflected by his comments to and about Plaintiff Palmieri before the Board of Supervisors, about which they took no action despite complaints, provides an inference of unlawful discriminatory intent that is properly considered in the case. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (stating that the circumstantial evidence necessary to present a Title VII case of discrimination under McDonnell Douglas is "flexible and depend[s] on the particular situation.") (citations omitted).

In sum, based upon the alleged facts in the Amended Complaint, Plaintiffs have properly set forth a Section 1981 claim and Defendant Wrathell's Motion to Dismiss on Plaintiffs' claims should be denied in full.

### C. Defendant Wrathell is not entitled to qualified immunity.

To receive qualified immunity, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir.1991)). Once that is established, the Eleventh Circuit generally follows a two-step analysis to determine if qualified immunity applies to any Section 1983 claim. The first step is to determine "whether the [defendant's] conduct amounted to a constitutional violation," and the second step is to "analyze [ ] whether the right violated was 'clearly established' at the time of the violation." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir.2009). "Whether a constitutional right was 'clearly established' at the time of the violation turns on whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1306 (11th Cir.2006) (internal quotation omitted).

Defendant Wrathell's Motion, however, only argues that Plaintiffs cannot allege a violation under Section 1981. Motion at 10. Defendant does not, therefore, argue that he meets the elements for qualified immunity. However, in Section I supra Plaintiffs set forth the numerous acts Wrathell engaged in that amounted to retaliation. For example, Defendant Wrathell's responsibilities as the District Manager involved, *inter alia*, advising Defendant District's Board of Supervisors regarding its business operations. Doc. 17, ¶18. Additionally, in or around June 2016, Defendant Wrathell in conjunction with a Board of Supervisors' member

caused the Defendant District to initiate an illegitimate investigation by a special counsel against Plaintiff Elite relating to its performance managing the Facilities that was later used as pretext to terminate Plaintiffs. *Id*., ¶¶22, 36. The illegitimate investigation without proper meetings and approval under the Sunshine Act is outside Defendant Wrathell's discretionary responsibility. Additionally, Wrathell provided the Email of Palmieri reporting concern about discrimination to Supervisor Jacob. *Id.,* ¶28. At the vote for premature termination of Elite's contract on September 29, 2016, Wrathell encouraged the Board of Supervisors to terminate the Defendant District's agreement with Elite. *Id*.,¶30. Defendant Wrathell engaged in adverse unlawful acts against Plaintiffs by recommending the termination of Plaintiff Elite's agreement with Defendant District and removing Plaintiff Palmieri from the workplace at the Facilities because of Plaintiffs' protected activity of complaining about race discrimination by Supervisor Jacobs. *Id.*, ¶42. As set forth above, Plaintiffs are entitled to the protections of Section 1981. *See* supra Section II A.

Finally, the analysis of whether Wrathell is entitled to immunity rests on whether he violated a "clearly established" right. In deciding whether a legal right was "clearly established" in the law, the question before the court is whether "the state of the law ... gave [the defendant] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). "'Clearly established' for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999)(citations omitted). Here, prior to 2015-2016, the Supreme Court

15

and Eleventh Circuit clearly determined that Section 1981 encompassed claims of retaliation. *See CBOCS West,* 553 U.S. at 457; *Andrews,* 140 F.3d at 1411-13. Additionally, the Eleventh Circuit in *Byrant*, also previously concluded that management employees could be held responsible for a Section 1981 retaliation claim. *Bryant,* 575 F.3d at 1301.

Defendant Wrathell has not shown any evidence that he is entitled to qualified immunity. Accordingly, the Motion should be denied.

### D. Plaintiffs have properly alleged punitive damages.

Defendant Wrathell contends that the Amended Complaint does not properly assert punitive damages against him. Motion at 10-11. As Defendant acknowledges, however, punitive damages are available against government officials in their individual capacity. *Id.* Since Plaintiffs have properly set forth allegations regarding punitive damages, Defendant's Motion should be denied.

For punitive damages to reach a jury, the plaintiff in a discrimination/retaliation matter must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to her federally protected rights. *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1280 (11th Cir.2002) (*citing Kolstad v. Am. Dental Assoc*., 527 U.S. 526, 536-37 (1999)). "Malice means an 'intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'" *Ferrill v. Parker Group, Inc*., 168 F.3d 468, 476 (11th Cir.1999) (*quoting Splunge v. Shoney's, Inc*., 97 F.3d 488, 491 (11th Cir.1996)). "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Miller*, 277 F.3d at 1280 (*citing Kolstad*, 527 U.S. at 536). To be liable for punitive damages, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527

U.S. at 536. Eleventh Circuit case law supports a finding upholding a punitive damages award where there is: "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations." *Dudley v. Wal-Mart Stores, Inc*., 166 F.3d 1317, 1322-23 (11th Cir. 1999). Punitive damages against an employer are upheld where failure to investigate discrimination demonstrates an ineffective anti-discrimination policy and reckless indifference to rights. *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261, 1281-82 (11th Cir. 2008).

In the case at hand, and at this stage of the case, there are sufficient facts alleged that Defendant Wrathell acted in reckless disregard of Plaintiffs' rights. As Plaintiffs have brought claim against Defendant Wrathell in his individual capacity, as set forth in the caption to the Amended Complaint (Doc. 17), the claim for punitive damages is proper. Factual allegations of Section I supra, setting forth Defendant Wrathell's retaliatory and discriminatory acts, including an illegitimate investigation of Plaintiffs and specifically urging the Board of Supervisors to terminate Plaintiffs after the Email complaining of discriminate demonstrate reckless disregard of Plaintiffs' rights. Doc. 17, ¶¶22, 23, 25, 2-28, 30. Additionally, the Amended Complaint sets forth the following allegations:

> 44. The acts and omissions committed by Defendant Wrathell, were willful, malicious and in reckless disregard of Plaintiffs' federally protected civil rights.
>
> 45. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damages, entitling Plaintiffs to an award of compensatory, consequential and other damages against Defendants District and Wrathell, including punitive damages against Defendant Wrathell.

Doc. 17, ¶¶44-45. These acts, when taken as true, sustain Plaintiffs' claim for punitive damages against Defendant Wrathell in his individual capacity. Accordingly, the Motion to Dismiss should be denied.

**WHEREFORE**, for the foregoing reasons, and any other reasons the Court may find, Plaintiffs Elite Amenities, Inc. and Angela Palmieri respectfully request the Court deny Defendant Craig Wrathell's Dispositive Motion to Dismiss and Incorporated Memorandum of Law (Doc. 13).

Dated: July 28, 2017								Respectfully submitted,

s/Neil L. Henrichsen
Neil L. Henrichsen
Fla. Bar No. 0111503
Helen H. Albee
Fla. Bar No. 987247
HENRICHSEN SIEGEL, P.L.L.C.
301 West Bay Street, Suite 1400
Jacksonville, FL 32202
Phone: (904)381-8183
Fax: (904) 212-2800
nhenrichsen@hslawyers.com
halbee@hslawyers.com
service@hslawyers.com

Trial Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record on this 28th day of July, 2017.

s/ Neil L. Henrichsen
Neil L. Henrichsen
